James E. Cecchi
**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com

Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
Telephone: (973) 639-9100
cseeger@seegerweiss.com

Adam J. Levitt
**DICELLO LEVITT LLP**
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com

Paul J. Geller
**ROBBINS GELLER RUDMAN**
 **& DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, Florida 33432
Telephone: (561) 750-3000
pgeller@rgrdlaw.com

*Counsel for Plaintiffs and the Proposed Class*

[*Additional Counsel Listed on Signature Page*]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIN BARTON, KIMBERLY BUSCAGLIA, FRANCIS W. CATANESE, and SAMUEL GALLO, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> RECKITT BENCKISER LLC; KENVUE, INC.; MCNEIL CONSUMER HEALTHCARE; PROCTER & GAMBLE COMPANY; GLAXOSMITHKLINE LLC; and WALGREENS INC., <br><br> Defendants. | Civil Action No. _____ <br><br><br> **CLASS ACTION COMPLAINT** <br><br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Erin Barton, Kimberly Buscaglia, Francis W. Catanese, and Samuel Gallo ("Plaintiffs"), individually and on behalf of all members of the public similarly situated, upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, allege as follows:

## <u>INTRODUCTION</u>

1.      Plaintiffs seek damages and equitable relief, individually and on behalf of all other Class members, for Defendants' sales of products to be taken orally containing phenylephrine, a compound that purportedly acts as a decongestant, but that Defendants have long known does no such thing. Defendants sold these phenylephrine-containing purported decongestants anyway, generating billions of dollars in sales in the last year alone.

2.      Phenylephrine is one of two compounds found in nasal decongestants administered orally and offered for sale on store shelves. The other compound is pseudoephedrine. While pseudoephedrine is effective as a decongestant, purchasing pseudoephedrine is often inconvenient for a consumer: because pseudoephedrine has been used as an ingredient in illicit methamphetamine laboratories, products containing it are usually placed behind store counters or in locked cabinets, and purchasers are sometimes forced to leave personal information every time they purchase it or are otherwise limited in the number of pseudoephedrine-containing medications they can buy. Consumers are naturally attracted to a decongestant that could be purchased without intendant inconvenience.

3.      By contrast, phenylephrine-containing products have no such restrictions and are not subject to a highly inconvenient buying process. Phenylephrine is found in many popular over-the-counter oral medications that purportedly act as decongestants—the "Decongestant

Products"—including such popular products produced by Defendants as Mucinex Sinus Max (Reckitt Benckiser), Sudafed PE (Kenvue[1]/McNeil Consumer Healthcare), Tylenol Cold & Flu Severe (Kenvue/McNeil); Benadryl Allergy Plus (Kenvue/McNeil); Theraflu (GlaxoSmithKline); Nyquil Severe Cold & Flu (Procter & Gamble Company); along with more generic Decongestant Products produced and sold by Defendant Walgreens.

4.     Last year alone, nearly $1.8 billion in sales of phenylephrine-containing purported decongestants were made in the United States across more than 250 products, accounting for approximately 80% of the market for over-the-counter decongestants.

5.     Unknown to the public, but known to the manufacturers in this lucrative market, phenylephrine taken orally is ineffective.  It provides no relief for congestion, and is no better than a placebo, like a sugar pill, as a decongestant when taken orally.

6.     Since at least 2007, scientific studies using modern testing methodologies and rigors have, time and again, shown that phenylephrine taken orally is ineffective. However, rather than acknowledge the truth of these studies, manufacturers, like Defendants, have continued to market and sell their products with phenylephrine as effective decongestant medicine.

7.     As one pharmacist who has led the examination of the efficacy of phenylephrine summarized it, "if you have a stuffy nose and you take this medicine, you will still have a stuffy nose."

8.     This fact did not stand in the way of Defendants continuing to sell phenylephrine products and charging a premium price for those ineffective products.

---

[1]  As noted below, Kenvue is a company, founded in February 2022, that prior to a spin-off had served as the Consumer Healthcare division of Johnson & Johnson. On information and belief, all assets and liabilities associated with the Decongestant Products that had been manufactured, marketed, and/or sold by Johnson & Johnson are now owned by Kenvue.

9.     Had Plaintiffs known that the phenylephrine-containing products were entirely ineffective as a nasal decongestant, they would not have purchased them, or would have paid substantially less for them.

10.     Accordingly, Plaintiffs, on behalf of themselves and all other purchasers of Defendants' phenylephrine products, seek to hold Defendants accountable for their deceptions, breaches of warranties, and violations of consumer protection statutes. Defendants knew these products were ineffectual. They marketed and sold them anyway.

## PARTIES

11.     Plaintiff Dr. Sam Gallo is a resident of Dublin, Ohio. In June or July 2023, he had sinus congestion associated with a cold and purchased Sudafed PE, a product manufactured by Defendants Kenvue/McNeil and containing phenylephrine for purported decongestant relief. The Sudafed PE was ineffective in relieving Dr. Gallo's congestion.

12.     Dr. Gallo has also in the past purchased other Decongestant Products, including Tylenol Cold & Flu Severe (Kenvue/McNeil), NyQuil Severe Cold & Flu (Procter & Gamble), Theraflu Severe Cold Relief (GlaxoSmithKline), and Mucinex Sinus Max (Reckitt). None of these products was effective in relieving congestion. All of Dr. Gallo's relevant purchases were in Ohio.

13.     Plaintiff Erin Barton is a resident of El Reno, Oklahoma. She purchased both Sudafed PE (Kenvue/McNeil) and Mucinex Sinus Max, a product manufactured by Defendant Reckitt, in September 2023 in Oklahoma. She bought both products to relieve congestion associated with a cold. Neither product was effective in relieving Plaintiff Barton's congestion.

14.     Plaintiff Kimberly A. Buscaglia is a resident of Boca Raton, Florida. In the last three years Ms. Buscaglia has purchased Mucinex (Reckitt), Sudafed (Kenvue/McNeil); Benadryl (Kenvue/McNeil); and a Walgreens generic brand (Walgreens), each of which contained

phenylephrine and purportedly could serve as a decongestant. She purchased the Walgreens product in 2023 in Florida. None of the products was effective in relieving congestion.

15.    Plaintiff Francis W. Catanese is a resident of Wantage, New Jersey. He has purchased Sudafed Sinus Congestion (Kenvue/McNeil), Tylenol Cold & Flu Severe (Kenvue/McNeil), Nyquil Severe Cold & Flu (Procter & Gamble), Theraflu Severe Cold Relief (GlaxoSmithKline), and Mucinex Sinus Max (Reckitt), all in New Jersey. None of the products was effective in relieving congestion.

16.    Defendant Reckitt Benckiser LLC ("Reckitt") is a Delaware limited liability corporation with its headquarters and principal place of business located in Parsippany, New Jersey. Reckitt is a wholly-owned subsidiary of Reckitt Benckiser Group PLC, a public limited company registered in England and Wales. Among other Decongestant Products, Reckitt manufacturers and markets Mucinex products containing phenylephrine and purporting to act as decongestants.

17.    Defendant Kenvue Inc. is an American consumer health company, and formerly the consumer healthcare division of Johnson & Johnson. Kenvue is headquartered in Skillman, New Jersey. It wholly owns Defendant McNeil Consumer Healthcare. On information and belief, all assets and liabilities associated with the Decongestant Products that had been manufactured, marketed, and/or sold by Johnson & Johnson are now owned by Defendant Kenvue.

18.    Defendant McNeil Consumer Healthcare is wholly owned by Defendant Kenvue, with headquarters in Fort Washington, Pennsylvania. McNeil manufactures and markets numerous Decongestant Products, including but not limited to Sudafed PE, a purported decongestant containing phenylephrine.

19.     Defendant Walgreens Inc. is an Illinois corporation that operates the second-largest pharmacy store chain in the United States, and is headquartered and has its principal place of business in Deerfield, Illinois. Walgreens sells generic versions of purported decongestants containing phenylephrine under a Walgreens brand.

20.     Defendant GlaxoSmithKline LLC is a Delaware corporation with its headquarters and principal place of business in Philadelphia, Pennsylvania. GlaxoSmithKline is a wholly-owned subsidiary of GlaxoSmithKline PLC, a public limited company registered in England and Wales. GlaxoSmithKline is a biopharmaceutical company that, among other Decongestant Products, manufactures and markets Theraflu.

21.     Defendant Procter & Gamble Company is an American multinational consumer goods corporation headquartered in Cincinnati, Ohio. Among other Decongestant Products, Procter & Gamble manufactures and markets Nyquil.

## JURISDICTION & VENUE

22.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are more than 100 Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000. This Court also has supplemental jurisdiction over the state law claims because those claims are integrally related to the federal claims and form part of the same case and controversy under 28 U.S.C. § 1367.

23.     This Court has personal jurisdiction over Defendants by virtue of their transacting and doing business in this District. Defendants have each purposefully availed themselves of the benefits and protections of the District of New Jersey by continuously and systematically

conducting substantial business in New Jersey. Each of the Defendants markets and distributes its products in New Jersey.

24.    The Court additionally and independently has personal jurisdiction over Defendants Reckitt and Kenvue because those companies locate and operate their headquarters in the State of New Jersey.

25.    Venue is proper pursuant to 28 U.S.C. § 1391(a) & (b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Defendants maintain key business operations in this district, and market and sell their products, including Decongestant Products, in this District.

## FACTUAL ALLEGATIONS

### *The Market for Decongestants*

26.    The market for products that purportedly relieve nasal congestion is worth over $2 billion annually and includes over 250 products.

27.    The two leading ingredients used to provide relief from nasal congestion are phenylephrine and pseudoephedrine.  These active ingredients are sold as the only active ingredient in some products, and as one of the active ingredients in multi-symptom products.

28.    Pseudoephedrine-based products *are* useful as decongestants. However, due to the misuse of pseudoephedrine as a base for the production of illegal methamphetamines, since 2006 federal law has made products containing pseudoephedrine, while available "over the counter" in the sense that they can, for the most part, be bought without a doctor's prescription, inconvenient to buy. The products are usually behind a pharmacy counter in locked containers, consumers are limited in the amount that they can purchase, and purchasers are often required to provide personal identification and other information to track the amount of the substance being purchased.

29.    Accordingly, the best-selling products in the decongestant market have been those that use phenylephrine, which account for approximately 80% of the market for over-the-counter decongestants. In the last year alone, nearly $1.8 billion of phenylephrine-based purported decongestants were sold.

***The Truth About Phenylephrine***

30.    The problem—until recently unknown to the public, but well-known to Defendants—is that phenylephrine does not work when taken orally. While sold as a decongestant, it provides no better relief from decongestion than a placebo.

31.    Scientists have long reported that phenylephrine is ineffective. As Leslie Hendeles PharmD and Randy Hatton PharmD succinctly stated in the Journal of Allergy and Clinical Immunology in May 2006, "Phenylephrine…is unlikely to provide relief of nasal congestion. It has poor oral bioavailability because of extensive first-pass metabolism in the gut and liver…Moreover, in a randomized, double blind, placebo-controlled, crossover study of 3 oral decongestants in 20 patients with chronic nasal stuffiness, phenylephrine was no more effective than placebo in reducing nasal airway resistance."[2]

32.    Scientific studies using modern testing methodologies (using good clinical practices) and rigors have, time and again, shown that phenylephrine is ineffective since then. On September 11 and September 12, 2023, the FDA held a non-prescription Drug Advisory Committee Meeting to discuss the efficacy of oral phenylephrine as a nasal decongestant. The

---

[2]    Leslie Handeles PharmD and Randy Hatton, Pharm D, *Oral phenylephrine: An ineffective replacement for pseudoephedrine?*, 118 J. Allergy and Clinical Immunology 1 (May 1, 2006), *citing* Bickerman HA. Physiologic and pharmacologic studies on nasal airway resistance Presented at a conference sponsored by the Scientific Development Committee of the Proprietary Association. Washington, DC. December 8, 1971, available at https://www.jacionline.org/article/S0091-6749(06)00633-6/fulltext#bib5

Advisory Committee explained that multiple studies have shown phenylephrine to be no better than a placebo.

33.    For example, the committee described a study conducted by Johnson and Johnson from 2017 to 2018 to evaluate an oral phenylephrine product (Defendant Kenvue was until this year part of Johnson & Johnson). As explained by the panel, the trial "suggest[ed] no beneficial effect [of phenylephrine] when compared with placebo."[3]

34.    This was hardly surprising. In 2015, Meltzer et al. conducted a dose-response study relating to the treatment of nasal congestion. The study subjects were given various combinations of commercially available oral phenylephrine tablets and a placebo. The "commercially available" tablet was reported in an editorial published in the same journal as the study to have been Johnson and Johnson's (now Kenvue's) Sudafed PE.[4] The results of the study were unequivocal. As the authors put it, "we failed to identify a dose for [phenylephrine]…that was significantly more effective than placebo in relieving nasal congestion…"[5]

35.    Nevertheless, Johnson & Johnson—and now freshly spun-off Kenvue—through its subsidiary Defendant McNeil continued to manufacture and sell its phenylephrine products, including Sudafed PE.

36.    Defendants, as manufacturers of the phenylephrine-based products, were each aware of the studies suggesting that phenylephrine is ineffective as a nasal decongestant.

---

[3]    *See* NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 52, available at https://www.fda.gov/media/171915/download

[4]    Hatton and Hendeles, Over the Counter Oral Phenylephrine: A Placebo for Nasal Congesion, J. Allergy Clin. Immunol Prac (Sept/Oct. 2015).

[5]    Meltzer *et al.*, *Oral Phenylephrine HCI for Nasal Congestion in Seasonal Allergic Rhinitis: A randomized, Open-label, Placebo-controlled Study*, 3 J. Allergy Clin. Immunol Pract 6 (Sept/Oct 2015).    Available    at    https://www.jaci-inpractice.org/action/showPdf?pii=S2213-2198%2815%2900252-4

37.     As one pharmacist who has led the examination of the efficacy of phenylephrine summarized it, "if you have a stuffy nose and you take this medicine, you will still have a stuffy nose."

## TOLLING OF ALL APPLICABLE STATUTES OF LIMITATIONS

### Discovery Rule Tolling

38.     Plaintiffs and the other Class members had no way of knowing about Defendants' deception concerning their Decongestant Products. As consumers, they reasonably believed that the products offered for sale as decongestants were capable of acting as decongestants.

39.     Within the time period of any applicable statutes of limitations, Plaintiffs and the other Class members could not have discovered through the exercise of reasonable diligence that Defendants' Decongestant Products were ineffective.

40.     Plaintiffs and the other Class members did not discover and did not know facts that would have caused a reasonable person to suspect that Defendants did not report information within their knowledge about the ineffectiveness of their Decongestant Products; nor would a reasonable and diligent investigation have disclosed that Defendants had concealed such information about the products' efficacy, which was only known by Plaintiffs and the other Class members after the FDA decision in September 2023.

41.     For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule for the claims asserted herein.

### Fraudulent Concealment Tolling

42.     All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time-period relevant to this action.

43.     Rather than disclose the truth about their Decongestant Products, Defendants falsely represented these products as ones that would relieve congestion.

*Estoppel*

44.     Defendants were under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of their Decongestant Products.

45.     Defendants knowingly, affirmatively, and actively concealed the true nature, quality, and character of their Decongestant Products.

46.     Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## CLASS ALLEGATIONS

47.     Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

48.     Plaintiffs seek to represent the following Classes:

> *All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Reckitt Benckiser in the United States (the "Reckitt Nationwide Class").*
>
> *All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Reckitt Benckiser in the State of New Jersey (the "Reckitt New Jersey Class").*
>
> *All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Reckitt Benckiser in the State of Florida (the "Reckitt Florida Class").*
>
> *All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Reckitt Benckiser in the State of Oklahoma (the "Reckitt Oklahoma Class").*
>
> *All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Reckitt Benckiser in the State of Ohio (the "Reckitt Ohio Class").*

*All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Walgreens, Inc. (the "Walgreens Nationwide Class").*

*All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Walgreens, Inc. (the "Walgreens Florida Class").*

*All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant McNeill Consumer Healthcare/Kenvue (the "Kenvue Nationwide Class").*

*All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant McNeill Consumer Healthcare/Kenvue in the State of Ohio (the "Kenvue Ohio Class").*

*All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant McNeill Consumer Healthcare/Kenvue in the State of Oklahoma (the "Kenvue Oklahoma Class").*

*All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant McNeill Consumer Healthcare/Kenvue in the State of New Jersey (the "Kenvue New Jersey Class").*

*All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant McNeill Consumer Healthcare/Kenvue in the State of Florida (the "Kenvue Florida Class").*

*All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant GlaxoSmithKline (the "GSK Nationwide Class").*

*All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant GlaxoSmithKline in the State of Ohio (the "GSK Ohio Class").*

*All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant GlaxoSmithKline in the State of New Jersey (the "GSK New Jersey Class").*

*All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Procter & Gamble (the "Procter & Gamble Nationwide Class").*

> *All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Procter & Gamble in the State of New Jersey (the "Procter & Gamble New Jersey Class").*
>
> *All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Procter & Gamble in the State of Ohio (the "Procter & Gamble Ohio Class").*

49.    Excluded from the Classes are the Defendants, and any of the Defendants' members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; and Court staff assigned to this case. Plaintiffs reserve the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

50.    This action has been brought and may properly be maintained on behalf of the Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

51.    Plaintiffs reserve the right before the Court to determine whether certification of other classes or subclasses are appropriate.

52.    Excluded from the Classes are Defendants, their officers, executives, subsidiaries, and affiliates, and the Judges to whom the case is assigned and their immediate family. Plaintiffs reserve the right to revise the definition of any Class based on information learned through discovery.

53.    Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

54.    *Numerosity*: Rule 23(a)(1): The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. Plaintiffs are informed and believe that there are hundreds of thousands of members of the Classes based on

the size of the market for decongestant products and Defendants' share of that market, but the precise number of Class members is unknown to Plaintiffs.

55.     *Commonality and Predominance*: Rule 23(a)(2) and (b)(3): This action involves common questions of law and fact which predominate over any questions affecting individual Class members, including, without limitation:

a.   When Defendants knew that phenylephrine was ineffective as a decongestant;

b.   Whether Defendants sold Decongestant Products as effective;

c.   What measures Defendants took to conceal the true nature of their Decongestant Products;

d.   Defendants' duty to disclose the true nature of their Decongestant Products;

e.   Whether Plaintiffs and the other Class members overpaid for Defendants' Decongestant Products; and

f.   Whether Plaintiffs and the other Class members are entitled to equitable and injunctive relief.

56.     *Typicality*: Rule 23(a)(3): Plaintiffs' claims are typical of the other Class Members' claims because, among other things, all Class members were comparably injured through Defendants' wrongful conduct as described above. Plaintiffs suffered damages as a direct proximate result of the same wrongful practices in which Defendants engaged.

57.     *Adequacy*: Rule 23(a)(4): Plaintiffs are adequate Class Representatives because their interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the Class's interests.

58.    *Declaratory Relief*: Federal Rule of Civil Procedure 23(b)(2): Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making declaratory relief appropriate, with respect to each Class as a whole.

59.    *Superiority*: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in managing this class action.  The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the members of the Classes to individually seek redress for Defendants' wrongful conduct.  Even if Class members could afford individual litigation, such litigation creates a potential for inconsistent or contradictory judgments. It increases the delay and expense to all parties and the court system.  By contrast, a class action is suited and intended to manage such difficulties and provide the benefits of uniform and common adjudication, economy of scale, and comprehensive supervision.

## CHOICE OF LAW

60.    Because Plaintiffs bring this Complaint in New Jersey, New Jersey's choice of law regime governs the state law allegations in this Complaint.  Under New Jersey's choice of law rules, New Jersey law applies to all Class members' claims, regardless of their state of residence or state of purchase, as there is no conflict between New Jersey's law and the laws of other states with an interest in the outcome of this litigation.

61.    Additionally, Defendants Kenvue and Reckitts have their principal place of business in New Jersey.  All Class members—even those who never set foot in New Jersey but

purchased Decongestant Products—directly implicate New Jersey's interest in regulating businesses and commerce.

### CLAIMS FOR RELIEF

### COUNT ONE
### NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A. 56:8-1, *et seq.*
### (All Defendants)

62.    Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1-61, as if fully set forth herein.

63.    Plaintiffs bring this claim on behalf of the Nationwide Classes or, in the alternative, the State Classes (the "Class," for purposes of this Count).

64.    At all relevant times, Defendants were each a "person," as defined by N.J.S.A. 56:8-1(d).

65.    At all relevant times, the Decongestant Products at issue constituted "merchandise," as defined by N.J.S.A. 56:8-1(c).

66.    At all relevant times, Defendants' sales and/or distribution of the Decongestant Products at issue met the definition of "sale" set forth by N.J.S.A. 56:8-1(e).

67.    N.J.S.A. 56:8-2 provides that "[t]he act, use or employment by any person of any unconscionable practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of material fact with the intent that others rely upon such concealment, suppression or omission, . . . is declared to be an unlawful practice…" As alleged herein, Defendants sold Decongestant Products to Plaintiffs and each other Class Member as products that provide relief for nasal congestion. Yet Defendants also knew that phenylephrine is ineffective at safe dosages when consumed orally.

68.     Defendants therefore engaged in practices that are unconscionable, deceptive, and fraudulent and that are based on false pretenses and the knowing concealment, suppression, or omission of material fact with the intent that others rely upon such concealment, suppression or omission in their manufacturing, selling, and distribution of their Decongestant Products. Defendants therefore violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

69.     As a direct and proximate result of Defendants' improper conduct, Plaintiffs and the other members of the Class have suffered damages and ascertainable losses of moneys, by paying more for Decongestant Products than they would have, and/or by purchasing Decongestant Products that they would not have purchased, in amounts to be determined at trial.

70.     New Jersey has numerous contacts with the conduct alleged herein and a strong interest in applying the New Jersey Consumer Fraud Act to that conduct. Defendants are found, do business, or transact business within this district. Defendants' improper conduct set forth herein occurred in this district or was conceived of and executed from this district in whole or in part. Defendants Kenvue's and Reckitts' principal place of business in the United States is in this District, and their pricing, sales, and distribution operations for their Decongestant Products sold throughout the United States, which form the basis of this litigation, originate from and/or are controlled by, their offices in this district.

71.     As such, New Jersey's contacts to this litigation make it a desirable forum for this litigation and New Jersey's interest in applying the New Jersey Consumer Fraud Act in this litigation outweighs any interests other states or their laws may have.

## COUNT TWO
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (All Defendants)

72.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1-61, as if fully set forth herein.

73.     Plaintiffs bring this claim on behalf of the Nationwide Classes or, in the alternative, the State Classes (the "Class," for purposes of this Count).

74.     At all times relevant all fifty States and the District of Columbia and Puerto Rico have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability and fitness for ordinary purpose.[6]

75.     Defendants were at all times a "merchant" within the meaning of Article 2 of the U.C.C., as codified under applicable law.

76.     The Decongestant Products are and were "goods" within the meaning of Article 2 of the U.C.C., as codified under applicable law.

---

[6]     *See e.g.*, Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84- 2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Ann. Art. § 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2- 314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382- A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314 and Wyo. Stat. § 34.1-2-314.

77.     Defendants were obligated to provide Plaintiffs and the other Class members Decongestant Products that were of merchantable quality, were reasonably fit for the purpose for which they were sold, and conformed to the standards of the trade.

78.     Defendants impliedly warranted that those drugs were of merchantable quality and fit for that purpose.

79.     Defendants breached their implied warranties, because their Decongestant Products were not of merchantable quality or fit for their ordinary purpose.

80.     Defendants' breaches of implied warranties were a direct and proximate cause of Plaintiffs' and the other Class members' damages.

**COUNT THREE**
**FRAUD BY OMISSION OR CONCEALMENT**
**(All Defendants)**

81.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1-61, as if fully set forth herein.

82.     Plaintiffs bring this claim on behalf of the Nationwide Classes or, in the alternative, the State Classes (the "Class," for purposes of this Count).

83.     Defendants intentionally and knowingly falsely concealed, suppressed and/or omitted material facts including as to the standard, quality or grade of the Decongestant Products. Due to their fraudulent conduct, Plaintiffs and the other Class members have suffered actual damages.

84.     Defendants knew that phenylephrine is ineffective at safe dosages when consumed orally.

85.     Defendants were obligated to inform Plaintiff and the other members of the Class of the effectiveness of phenylephrine due to their exclusive and superior knowledge of the

Decongestant Products. Plaintiffs and other Class members also expressly reposed a trust and confidence in Defendants because the nature of their dealings as a healthcare entity and with Plaintiffs and other members of the Class as their consumers.

86.    Plaintiffs and the other Class members would not have purchased the Decongestant Products but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Decongestant Products and existence of the Decongestant Products, or would have paid less for the Decongestant Products.

87.    Defendants knew their concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts.

88.    Defendants acted with malice, oppression, and fraud.

89.    Plaintiffs and the other Class members reasonably relied on Defendants' knowing, affirmative, and active false concealment and omissions.  As a direct and proximate result of Defendants' omissions and active concealment of material facts regarding the Decongestant Products, Plaintiffs and the other Class members have suffered actual damages in an amount to be determined at trial.

**COUNT FOUR**
**UNJUST ENRICHMENT**
**(all Defendants)**

90.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1-61, as if fully set forth herein.

91.    Plaintiffs brings this claim on behalf of the nationwide Class or, in the alternative, the State Classes (the "Class," for purposes of this Count).

92.    There are no material differences in the elements of the unjust enrichment cause of action in the various states. In all states, the focus of an unjust enrichment claim is whether the

defendant was unjustly enriched. At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state. Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, New Jersey law applies to those claims.

93.    Defendants' efforts include, but are not limited to, providing point-of-sale materials and coupons to entice Plaintiffs and the other Class members to purchase Decongestant Products.

94.    It would be inequitable for Defendants to insulate themselves from liability on this unjust enrichment claim by asserting that retail sales by their retailers cuts off any relationship between the Plaintiffs and the Classes and Defendants because Plaintiffs and the other Class members cannot seek a remedy directly from Defendants' retailers based on Defendants' sale of the Decongestant Products.

95.    Plaintiffs and all other Class members conferred a benefit on Defendants by purchasing Decongestant Products.

96.    Defendants have been unjustly enriched in retaining the revenues derived from Class members' purchases of Decongestant Products, which retention under these circumstances is unjust and inequitable because Defendants misrepresented that Decongestant Products were effective for providing congestion relief when in fact they were not, which caused injuries to Plaintiffs and all Class members because they paid a price premium due to Defendants' deception.

97.    Because Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiffs and all Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT FIVE
### Violation of Fla Stat. §501.204(1)
### (Reckitt, Kenvue, McNeil)

98.    Plaintiff Kimberly A. Buscaglia ("Plaintiff," for purposes of the Florida Class's claims) repeats and realleges the allegations contained in Paragraphs 1-61, as if fully set forth herein.

99.    Ms. Buscaglia brings this claim on behalf of herself and the Florida Classes (the "Class," for purposes of this Count) and against Defendants Reckitt, Kenvue, and McNeil.

102.    FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.204(1).

103.    In construing FDUTPA, "due consideration and great weight shall be given to the interpretation of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017." Fla. Stat. §501.204(2).

104.    Ms. Buscaglia and the Florida Class members are "[c]onsumers" and "[i]nterested part[ies] or person[s]" as defined by FDUTPA.  Fla. Stat. §501.203(6)-(7).

105.    Defendants' actions set forth herein occurred while engaging "[t]rade or commerce" as defined by FDUTPA.  Fla. Stat. §501.203(8).

106.    Defendants' conduct, as set forth herein, constitutes unfair methods of competition, unconscionable acts or practices, or unfair or deceptive acts or practices under FDUTPA.

107.    As alleged in more detail herein, at the time Defendants advertised and sold the Decongestant Products, they knew that the Decongestant Products could not work.

108.    Ms. Buscaglia and the other Florida Class members were therefore induced to purchase the Decongestant Products under false pretenses.

109.    Ms. Buscaglia and the other Florida Class members had no way of knowing that the Decongestant Products did not and could not work.

110.    Defendants knowingly and intentionally manufactured and sold the Decongestant Products with the intent to mislead reasonable consumers, including Ms. Elliott and the other Florida Class members.

111.    Defendants knew or should have known that their conduct violated FDUTPA.

112.    Defendants owed Ms. Buscaglia and the other Florida Class members a duty to disclose the true nature of their Decongestant Products, because Defendants:

        (a)    possessed exclusive knowledge that they were manufacturing, selling, and distributing products throughout the United States that did not perform as advertised; and/or

        (b)    intentionally concealed the foregoing from Ms. Buscaglia and the other Florida Class members.

113.    Defendants' unfair, unconscionable, or deceptive acts or practices were likely to, and did in fact, deceive ordinary, reasonable consumers, including the Florida Class members, about the quality and efficacy of the Decongestant Products, and the true value of the Decongestant Products.

114.    Defendants' violations present a continuing risk to the Florida Class members, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

115.    Defendants had an ongoing duty to all their customers to refrain from unfair, unconscionable, and deceptive acts and practices under FDUTPA.

116.    All purchasers of the Decongestant Products suffered ascertainable loss and actual damages as a result of Defendants' deceptive, unconscionable, and unfair acts and practices made in the course of Defendants engaging in trade or commerce through loss of money or property at the time of purchase in form of the full or partial retail price paid for the Decongestant Products.

117.    As a direct and proximate result of Defendants' violations of FDUTPA, Ms. Buscaglia and the Florida Class members have suffered injury-in-fact and/or actual damages.

118.    As a result of the foregoing willful, knowing, and wrongful conduct of Defendants, Ms. Buscaglia and the Florida Class members have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual damages, reasonable attorneys' fees and costs, an Order enjoining Defendants' deceptive and unfair conduct, and all other just and appropriate relief available under FDUTPA.

119.    Ms. Buscaglia, individually and on behalf of the Florida Classes, seeks monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

## COUNT SIX
### VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT
### R.C. § 1345.01, *et seq.*
### (Reckitt, Kenvue, McNeil, Procter & Gamble, GlaxoSmithKline)

120.    Plaintiff Sam Gallo ("Plaintiff," for purposes of the Ohio Class claims) repeats and realleges the allegations contained in Paragraphs 1-61, as if fully set forth herein.

121.    Plaintiff brings this claim individually and on behalf of the other members of the Ohio Classes (the "Class," for purposes of this Count) against Defendants Reckitt, Kenvue, McNeil, Procter & Gamble, and GlaxoSmithKline.

122.    Plaintiff, the other Class members, and Defendants are each a "person" within the meaning of R.C. § 1345.01(B).

123.    The sales of Decongestant Products from Defendants to Plaintiff and the other Class members are "consumer transactions" within the meaning of R.C. § 1345.01(A).

124.    The Ohio Consumer Sales Practices Act ("Ohio CSPA") declares unlawful "an unfair or deceptive act or practice in connection with a consumer transaction," including any representation that a product "has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have," or that the product "is of a particular standard, quality, grade, style, prescription, or model, if it is not . . . ." R.C. § 1345.02(A) & (B)(1)–(2).

125.    As alleged above, Defendants sold the Decongestant Products as effective at relieving nasal congestion and similar symptoms despite knowing that phenylephrine was not effective for such symptoms. These unfair and deceptive acts and practices had the capacity, tendency, or effect of misleading consumers in violation of the Ohio CSPA.

126.    Defendants willfully and knowingly withheld information about the inefficacy of phenylephrine.

127.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts: (a) had a tendency or capacity to mislead and create a false impression in consumers; and (b) were likely to and did deceive consumers, including Plaintiff and the other Class members, about the true efficacy of the Decongestant Products.

128.    Defendants knew or should have known that their conduct violated the Ohio CSPA.

129.    Defendants owed Plaintiff and the other Class members a duty to disclose the true quality and efficacy of the Decongestant Products because Defendants:

a.    Knew the lack of efficacy of phenylephrine was a material fact that would affect Plaintiff's or the other Class members' decisions to buy Decongestant Products;

b.      Possessed exclusive knowledge of the lack of efficacy of the Decongestant Products; and/or

c.      Intentionally concealed the foregoing from Plaintiff and the other Class members.

130.    Defendants' failure to disclose and active concealment of the lack of efficacy of the Decongestant Products were material to Plaintiff and the other Class members. An effective nasal decongestant drug is worth more than an otherwise comparable nasal decongestant drug that is ineffective.

131.    Plaintiff and the other Class members suffered ascertainable loss caused by Defendants' sale of the Decongestant Products. Had Plaintiff been aware of the lack of efficacy of the Decongestant Products, Plaintiff either would have paid less for the Decongestant Products or would not have purchased them at all. Plaintiff and the other Class members did not receive the benefit of their bargain as a result of Defendants' misconduct.

132.    Plaintiff and the other Class members risk irreparable injury as a result of Defendants' acts and omissions in violation of the Ohio CSPA, and those violations present a continuing risk to Plaintiff and the other Class members. Defendants' unlawful acts and practices complained of herein affect the public interest.

133.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and the other Class members suffered actual damages. Plaintiff and the other Class members received goods that have substantially impaired value. Plaintiff and the other Class members have suffered incidental, consequential, and other damages.

134.    Plaintiff seeks an order enjoining Defendants' unfair, unlawful, and deceptive practices, declaratory relief, actual and statutory damage, attorneys' fees and expenses, and any other relief permitted under Ohio law.

**COUNT SEVEN**
**VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT**
**15 Okla. Stat. § 751 *et seq.***
**(Reckitt, Kenvue, McNeil)**

135.    Plaintiff Erin Barton ("Plaintiff," for purposes of the Oklahoma Classes' claims)
repeats and realleges the allegations contained in Paragraphs 1-61, as if fully set forth herein.

136.    Plaintiff brings this claim individually and on behalf of the other members of the
Oklahoma Classes (the "Class," for purposes of this Count), against Defendants Reckitt, Kenvue,
and McNeil.

137.    Plaintiff, the other Class members, and Defendants are each a "person" within the
meaning of 15 Okla. Stat. § 752(1).

138.    The sales of Decongestant Products from Defendants to Plaintiff and the other Class
Members are "consumer transactions" within the meaning of 15 Okla. Stat. § 752(2).

139.    The Decongestant Products are "merchandise" within the meaning of 15 Okla. Stat.
§ 752(7).

140.    The Oklahoma Consumer Protection Act ("Oklahoma CPA") defines a "deceptive
trade practice" as "a misrepresentation, omission or other practice that has deceived or could
reasonably be expected to deceive or mislead a person to the detriment of that person." 15 Okla.
Stat. § 752(13).

141.    The Oklahoma CPA defines an "unfair trade practice as "any practice which offends
established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or
substantially injurious to consumers." 15 Okla. Stat. § 752(14).

142.    As alleged above, Defendants sold the Decongestant Products as effective at
relieving nasal congestion and similar symptoms despite knowing that phenylephrine was not

effective for such symptoms. These deceptive and unfair trade practices had the capacity, tendency, or effect of misleading consumers in violation of the Oklahoma CPA.

143.    Defendants willfully and knowingly withheld information about the inefficacy of phenylephrine.

144.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts: (a) had a tendency or capacity to mislead and create a false impression in consumers; and (b) were likely to and did deceive consumers, including Plaintiff and the other Class members, about the true efficacy of the Decongestant Products.

145.    Defendants knew or should have known that their conduct violated the Oklahoma CPA.

146.    Defendants owed Plaintiff and the other Class members a duty to disclose the true quality and efficacy of the Decongestant Products because Defendants:

a.    Knew the lack of efficacy of phenylephrine was a material fact that would affect Plaintiff's or the other Class members' decisions to buy Decongestant Products;

b.    Possessed exclusive knowledge of the lack of efficacy of the Decongestant Products; and/or

c.    Intentionally concealed the foregoing from Plaintiff and the other Class members.

147.    Defendants' failure to disclose and active concealment of the lack of efficacy of the Decongestant Products were material to Plaintiff and the other Class members. An effective nasal decongestant drug is worth more than an otherwise comparable nasal decongestant that is ineffective.

148.    Plaintiff and the other Class members suffered ascertainable loss caused by Defendants' sale of the Decongestant Products. Had Plaintiff been aware of the lack of efficacy of the Decongestant Products, Plaintiff either would have paid less for the Decongestant Products or would not have purchased them at all. Plaintiff and the other Class members did not receive the benefit of their bargain as a result of Defendants' misconduct.

149.    Plaintiff and the other Class members risk irreparable injury as a result of Defendants' acts and omissions in violation of the Oklahoma CPA, and those violations present a continuing risk to Plaintiff and the other Class members. Defendants' unlawful acts and practices complained of herein affect the public interest.

150.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and the other Class members suffered actual damages. Plaintiff and the other Class members received goods that have substantially impaired value. Plaintiff and the other Class members have suffered incidental, consequential, and other damages.

151.    Plaintiff seeks an order enjoining Defendants' unfair, unlawful, and deceptive practices, declaratory relief, actual and statutory damage, attorneys' fees and expenses, and any other relief permitted under Oklahoma law.

## NOTICE TO ATTORNEY GENERAL

152.    A copy of the original complaint filed in this action was mailed to the Attorney General of the State of New Jersey within 10 days of filing, pursuant to N.J.S.A. 56:8-20.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that the Court enter judgement in their favor and against Defendant, as follows:

A.    Certification of the proposed Class with Plaintiffs as class representatives;

B.     Appointment of Plaintiffs' counsel as Class Counsel;

C.     Injunctive relief, including, but not limited to:

    a.   Requiring Defendants to make full disclosure of their knowledge of the efficacy of their Decongestant Products;

    b.   Disgorgement of their profits from the sales of their Decongestant Products;

    c.   Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial;

    d.    An order requiring Defendants to pay both pre- and post-judgment interest on all amounts awarded;

    e.   An award of costs and attorneys' fees; and

    f.   Such other further relief as may be appropriate.

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK**

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all claims so triable.


Dated:  September 14, 2023


Respectfully submitted,


/s/ James E. Cecchi

James E. Cecchi

Donald A. Ecklund

Jordan M. Steele

**CARELLA, BYRNE, CECCHI,**

**  BRODY & AGNELLO, P.C.**

5 Becker Farm Road

Roseland, New Jersey 07068

Telephone: (973) 994-1700

jcecchi@carellabyrne.com

decklund@carellabyrne.com

jsteele@carellabyrne.com


Adam J. Levitt

John E. Tangren

Daniel R. Schwartz

**DICELLO LEVITT LLP**

Ten North Dearborn Street, Sixth Floor

Chicago, Illinois 60602

Telephone: (312) 214-7900

alevitt@dicellolevitt.com

jtangren@dicellolevitt.com

dschwartz@dicellolevitt.com


Christopher A. Seeger

David R. Buchanan

Scott A. George

**SEEGER WEISS LLP**

55 Challenger Road, 6th Floor

Ridgefield Park, New Jersey 07660

Telephone: (973) 639-9100

cseeger@seegerweiss.com

dbuchanan@seegerweiss.com

sgeorge@seegerweiss.com


Paul J. Geller

Stuart A. Davidson

**ROBBINS GELLER RUDMAN**

**  & DOWD LLP**

225 NE Mizner Boulevard, Suite 720

Boca Raton, Florida 33432

Telephone: (561) 750-3000

pgeller@rgrdlaw.com

sdavidson@rgrdlaw.com


*Counsel for Plaintiffs and the Proposed Class*